This next case is case number 4-18-0039, Jane Gucker v. Susana Mendoza et al. Counsel, could you state your appearances for the record? James Martinkus on behalf of the Avalon Jane Gucker. And Richard Pustak, Assistant Attorney General for the State Police Detention System Board. And Susan Mendoza on behalf of the Avalon Jane Gucker. Okay, thank you. Mr. Martinkus, are you ready to proceed? I am, Your Honor. You may. Thank you. May it please the Court? Counsel. Counsel. I'm here on behalf of Jane Gucker. Jane Gucker was a valuable employee for the Capital Development Board. In 2012, January, she signed a contract. The contract specifically was approved by the board and set forth all of its terms. She performed that contract. She did everything required of her, and the Capital Development Board paid the salary which it had agreed to pay. She retired in May of 2014. Upon her retirement, she began drawing her pension under the CSRS program. About seven months after she had begun drawing her pension, she received some sort of notification from the Capital Development Board, which purportedly said that, well, when they had offered the contract somehow, I guess they didn't make the right determinations, and in their mind, paid her more than they should have. About two years later, May of 2016, the Capital Development Board asked the comptroller to issue a warrant to CSRS to do two things. One, collect all of the money that it purportedly overpaid my client. Contractual. Nothing to do with pension. And then two, that's about $30,000. And then two, repay about $8,000. That, in fact, was based upon the information that was correct, but now CSRS has to be changed. So there's two real issues for you to decide. One, under our Constitution, can the state come in and take from Jane's pension monies it claims is owed pursuant to a contract? The Illinois Constitution, Article 13, Section 5, is fundamentally clear that you cannot diminish or impair a pension benefit. There's other information, legislation, pension code, that basically says the same thing, but doesn't specifically list in its ordinance the fact that you can't take pension benefits. That's of no avail. It means nothing because you have a Constitution that specifically precludes it. So the arguments with respect to whether or not the comptroller statute or the pension code came first really has no real play in this whole thing because the Constitution of the state of Illinois, the people have directed that the state or any other entity cannot take. But counsel, is correcting an arithmetic error impairing a pension benefit? That question is a good question. It goes to the second argument. There's nothing about correcting a pension benefit mistake that has anything to do with the Capital Development Board trying to get $30,000 back in a contract. So your question is a very good question. It goes to the second portion of this. Does CSRS, under the new mandate of the statute that was issued in August of 2014, have the ability to correct a mistake? I submit to you, you may not agree. If you don't agree, I'll probably lose that portion of the case. But a mistake is not something that the Capital Development Board can unilaterally decide, well, we should have entered into a contract with you. If it's an arithmetic mistake, if CSRS provides the wrong information, I'm sorry, if the Capital Development Board provides the wrong information, wrong employee, wrong data, they did something in the calculation, absolutely. I think that is clear. But you cannot simply unilaterally say, oh, we should have given you the contract that we gave that you fully performed. And then two years later, we're going to come back and say that's a mistake. That's not a mistake. CSRS didn't make any mistake in the calculation. That new statute, the amended statute, talks about mistakes made in the calculation. And there was no mistake made in the calculation. The Capital Development Board provided CSRS the exact data it needed to calculate Jane's pension. And it did so exactly on the information provided by the Capital Development Board. So there's two different issues here. One, can the state in any fashion collect without a hearing? We filed a letter of protest. There was no hearing given. There was no process given. They decided unilaterally to direct the comptroller to go and get the money from Jane for their contract damages. It's really important that you understand that. Contract damages, the $30,000 they've saved, we shouldn't have paid even though we signed on it, we agreed to it, and you fully performed. And again, the reason they did this, in my humble opinion, is that if they filed a lawsuit to try to collect this, any trial judge would have probably granted a 2-6-15 motion to dismiss. You can't, after the fact, say, well, I made a mistake, even though someone fully performed, we fully approved it, it was a unilateral mistake, and then two years later come back and say, you know, I shouldn't have paid you that much money to build my fence, that sort of argument. Can you describe and characterize the error that was identified by the Capital Development Board that led to the recalculation? I think if I understand it, and I don't purport to know it exactly, it had something to do with certain benefits that one would receive for working certain time periods, things of that nature. I never, you know, I received some of this stuff, and I tried to read it from their actuarial perspective. I'm not going to profess to you I truly understood it. But it had something to do with the way they wanted to make payments to give certain benefits for people that worked different shifts, different hours, something like that. I apologize, but I read the stuff, and I wasn't convinced I knew exactly what their claim was. How long was it claimed to have existed? Well, they claimed it was from the January of 2012, that was the date of the contract, until she retired in May of 2014. So they're saying, well, we signed a contract with you, our board approved it, every member of the board that was required to sign it signs it, you fully perform, and then we think, oh, well, we shouldn't have given you these benefits. You know, it's unlike the case, this countryside case, which counsel had asked permission to cite after the briefing. In that particular case, the first district said, now, wait a second. This is a pension benefit not based upon some contractual error in your contracting. This is something that you, the board, went and violated the pension code. They tried to make some adjustments with respect to how to get rid of these certain employees because it benefited them if they took the early retirement. So we're going to give you a kicker here. You're going to get more of your pension benefit, but it's going to save money longer. The first district there said, no, no, no, you can't do that, not when you violate the statute that specifically determines how these pension benefits are to be calculated. There's no such analogy here whatsoever. There's no such comparable statement of fact. There's no such comparable statute. This is simply a unilateral decision by a capital development board that says, you know what? When we gave you this contract, we really should have thought it differently, and we shouldn't have maybe given you some of these additional perks, although we did. And Jane accepted, and Jane performed. And two and a half years later, then they come back and say, you know, you can't do that. So you really have two separate issues here. One, can the capital development board take the pension to get back the $37,000 it says it overpaid her on the contract? And this would be, they figured out later they overpaid her in that they authorized her to be paid a certain amount. They did. Because the personnel action forms show that they're signed off on by deputy directors, executive directors. That's exactly right, Judge. So then it's like, again, the analogy I draw is that I ran into a contract for some to build a fence or something, and then I didn't realize that I probably shouldn't have given them some additional funds for the materials or some additional labor. And then after he does it, two years later, he says, you know what, I want to redo that contract. I mean, it's ridiculous to me. And I don't think there's a judge in the world that would, this would survive a 2-6-15 motion if we ever had a hearing. But of course, there was no process. We filed a letter of protest, and they said too bad, and they took and had the comptroller issue a warrant to serve. Take money from Jane's pension, not to reestablish pension benefits. There's an $8,000 claim, which if you agree that this wasn't really a, if this was a mistake, that $8,000, then if you follow logically, okay, it might be subject to coming back based upon the new pension statute. But there's nothing to suggest they could ever come in and take $30-some-thousand that had nothing to do with the pension calculation. This had to do with their claim, hey, we shouldn't have entered into the contract. We performed, we created, and you performed. You're saying that contract laws should govern here. Absolutely. Has there been an argument made by your client that this special skilled pay that underlies the claim of mistake actually was earned, or that she was due that? Judge, you know, that's an excellent question. I don't know if I can truly answer that, because I can't sit here and separate what her regular employment jobs would be and what additional, and there's probably no allocable consideration for this additional time. But she did everything that the contract required her to do. She did everything that they anticipated she would do. She performed it fully. She got paid fully. And then two and a half years later, they say, well, we shouldn't have given that. Let me suggest a hypothetical where you have a contract similar to what your client had here, but included in the contract was a monthly stipend for travel to Anchorage, Alaska. She knows full well her job doesn't encompass travel to Alaska. But there it is nonetheless, and it's included in her pay. And then we get to retirement, and a retirement that is based upon a salary that includes that stipend, where the employee knows that really wasn't something that she was entitled to. Shouldn't CSRS be allowed to come back in and identify that mistake? Because, again, it's you saying that she earned it. Did she earn it? I think so. I mean, again, I don't think the facts in your hypothetical match the facts here. I don't think there was, like you suggested, a stipend to go to Alaska that she clearly never performed. I don't think those sort of conditions were separable in that sense. She had a contract. And I think, following your argument, Justice Harris, it would seem to me that in that case the Capital Development Board might bring an action and have a jury or a judge decide the fact. But even if you're 100 percent right, assuming she didn't earn anything, it still doesn't give the Board the right to unilaterally go and grab her pension. The Constitution says you can't do that. So if the one issue you're raising, did she earn it? I think she did. And I don't think one can come back later after you perform and say, well, this is how we structured the salary, but we shouldn't have done it that way. We shouldn't have structured it that way. I don't think you can do that. But, again, I think it's a far separate issue with respect to whether or not you can then unilaterally collect the funds from her pension. Maybe furthering your question, could CSRS come in then and say, hey, no, we did make a mistake. But they didn't make the mistake. If, in fact, the Capital Development Board paid her money based upon something that they shouldn't have done or something along those lines, it's still based upon performance. A mistake in this context in the cases that I've written, the Kozlowski case and other cases, they're all in the brief. They clearly say a mistake is something in the calculation. It's where the Capital Development Board gives wrong information. They gave proper information because the information is based upon a contract they wrote, their board approved, my client accepted, and she performed. There was no mistake. There wasn't a mathematical error. There was nothing to suggest there was any mathematical error made. Nothing. Again, think about what that would really open up. It would allow any, I guess, governmental agency to come back and say, well, you know what, we really shouldn't have given you that additional benefit because when we think about it, maybe you didn't perform that or maybe that's not what we really should have done. Maybe that's something that would have been reserved for some other calculable formula. It would put people in jeopardy that at any point the state could come in and all of a sudden change the deal that they performed. I have strong views on this only because I think once someone in good faith who's not someone who's a member of the board who has all the knowledge of how your IP formula is, when you act in good faith and you contract with someone and you accept the contract and you say this is what I'm going to get paid to do these tasks and I do all the tasks and two and a half years later, you come back with a process and take my pension because you believe that I shouldn't have offered that. I shouldn't have included all that money to you because that's not how we really did it. Counselor, going back to President Justice Harris's question earlier, he asked me what the error was and you said it was kind of confusing. It wasn't to me. I'm precisely sure, but it seems like you're saying that two and a half years later they came back and said that they overpaid. They did. They did overpay based upon the contract they entered into. They simply overpaid on a theoretical contract they shouldn't have offered. That's what they're saying. Okay, so that would be the mistake then that they made. Well, it's not a mistake in calculating the pension. Right. I understand what you're saying. It might be a mistake in how they arrived at entering into a contract, but people do that all the time. People's contract is underbid and they're stuck with the contract. They can't go back in and say, you know what? I really didn't calculate this right. Therefore, although you paid me everything and built your house, you really owe me another $10,000. I mean, that's really what I think you're saying. Yeah. In their minds, they've miscalculated how they should have. That is what I was trying to say. Is that what you're saying? That's what I want to know. Well, I think we're talking different miscalculations. I think that CSRS and the California Development Board said, yeah, we miscalculated when we gave this lady the salary. We did. Over that period of time, they evaluated her salary and paid her more. Her salary went up over that period of time. According to these personnel action forms, she was given credit for longevity. She was given a colon. She was given specialized skill pay. Longevity is not the same each year. That apparently is pursuant to an AFSCME contract. There's a reference to that. I guess that's what that means. What does that mean when the executive director signs that and says this is the salary that you're getting per month? I struggle with that. I mean, if the director or executor tells you these are what you're getting paid and you accept and perform, I don't know how they come back later and say, well, you really don't get that even though you earned it based upon the contract we did enter into. That seems so unfair to me. Moreover, again, whatever your thought is with respect to whether they can or cannot do that still doesn't address the issue. It doesn't give them any green light to go grab her pension. That, to me, is the most fundamental question here. You can't grab the person's pension. The Supreme Court not too recently entertained a case, which I'm sure you're familiar with. It's in the briefs. You can't do that. You can't go in and take someone's pension. It's sacrosanct. It is what they have. The Constitution says you can't touch it. No legislative enactment which varies or tries to compromise the Constitution mandate is permissible. So from my perspective, well, I think you understand my perspective. I don't think that they can come in and do what they did. I don't think they can grab her money. I don't think they can make adjustments because this was not a mistake in the context of what I'm talking about. There are some side issues that they raised about whether or not this is moot. My complaint had two counts. One was mandamus, asking the judge to return the money. That's not moot. Injunction might be moot because, obviously, the money has been taken. But it's certainly not moot from that perspective. And then the argument of whether or not this court here has jurisdiction, again, I don't think is in any fashion an issue here. I argued the literal case in the Supreme Court in that particular case said clearly unless there is a present claim for damages, you have jurisdiction. Here the jurisdiction is to ask the court not to take any money from the state coffers, but to return ill-gotten money that the state took from my client. These are earmarked funds from my client. We're not asking for any interest. We're not asking anything. So I don't think those are real issues. So I'm not going to do much more on those unless you want me to. But, I mean, I've laid it all out in the brief. I think the real question that it boils down to is, one, can you just go in and take $30,000 from her? And, two, was this the mistake contemplated under the Pension Reform Act that permits him to make a change? Thank you. Okay. Thank you. Is it Mr. Hussag? I'm sorry. It's pronounced Hussag. Hussag. I'm sorry. Response, please. Thank you, Your Honors. Counsel, may it please the court. Assistant Attorney General Richard Hussag, and I urge the court to affirm the circuit court's judgment because it is correct with respect to all of the claims asserted by the plaintiff and the relief they sought under those claims. I want to emphasize that it's sort of easy to confuse all of the different claims and all of the different relief and all of the different administrative proceedings and the legal theories that relate to those separate proceedings. And even though they derive from a single factual occurrence, which is the Capital Development Board's miscalculation of her salary under her two categories of overpayments that led to two administrative proceedings that are separate. At what level was the issue of whether or not an error in the calculation of her pay, at what level was that resolved? Who made that determination that there had been an error? There's sort of several phases of that. First, there was no unilateral action by the Capital Development Board. The Illinois Auditor General conducted an audit and said that the Capital Development Board had been calculating skill pay, which was part of a union contract amendment, a memorandum of understanding to their basic collective bargaining agreement. They'd been correctly calculating it since 2006, but starting in the beginning of 2012, they erroneously included special skill pay in base pay, with the result that that increased the cost of living adjustments and the longevity pay. All of this was pursuant to contracts that were entered into pursuant to collective bargaining. I don't know whether the plaintiff was a member of the union or not, but she was a member of the bargaining unit. And the only contracts here are the collective bargaining agreement and the memorandum of understanding. And the Capital Development Board was advised by the Auditor General that the CDB had started making a mistake, and apparently it had to do with something in their payroll processing program where there wasn't a space to put the special skill pay in separately from base pay. And so the calculation showed they had erroneously included it in base pay, starting in those most recent years, which had inflated her salary. There was no separate contract negotiated. Did this error then affect many people? It affected five people. And I want to clarify that all of the other four understood and agreed that they had been overpaid and repaid the money back to the Capital Development Board. Is that in the record? Yes, it's attached in the separate appendix, page SA-67. It explains that. This is a situation in which she was given multiple opportunities to come up with a repayment plan. She refused all of them. She asked for an extra year to try and address the matter. And she finally said, no, I'm not going to pay anything back. I don't owe you anything. There's no doubt that she provided valuable service to the Capital Development Board for 20 years. Nobody disputes that. At what level was she given an opportunity to dispute that an error was made? She was given that opportunity in front of the Capital Development Board before it submitted its offset requests to the comptroller. She was given that opportunity to contest that in front of the comptroller, which she did. She submitted her papers to that effect. This is all with respect to the offset regarding the recovery of the salary over payments. I'm going to deal with this pension clarification or modification separately. And after the comptroller determined that the offset request by the Capital Development Board was valid, she still has an opportunity to seek the return of these monies in the court of claims. That's what the Attorney General's opinion referred to in our brief says, that you have to have some process before an offset request is made to the comptroller. She had that. She had process before the comptroller before it determined whether to pay the monies to her or to send them to the agency making the offset request. And she has the right again to get process in front of the court of claims to determine whether, if in fact she's right with respect to the supposed contract, that she could get that money back. There's a process three ways from Sunday. Can you explain what the error was and can you then tell us why the Capital Development Board shouldn't be held to the contract that contained this error as Mr. Martinkus argues? But there is no contract that contains this error. I want to clarify that. Forget the contract. That's a misrepresentation. Blame the mistake. Okay. So the way it works is this, is that the Memorandum of Understanding, which is an amendment to the Collective Barring Agreement entered through the union, it says that the people who have professional licenses and in the course of their functions for the Capital Development Board use those professional licenses as part of their work, they are entitled to special skill pay in addition to all of their other compensation. And the way that had been consistently applied for six years before the Capital Development Board got it mixed up was that you take the base pay, which is increased each year by any collective bargaining negotiations, and then you add to that the cost of living adjustments each year, the annual adjustments, and then you add to that longevity pay. But you do not add special skill pay. That goes afterwards only after those calculations have been made. And the error in this case, she didn't do any extra work for this. This was part of her regular responsibilities because she was a licensed architect. She did no extra work. But she was entitled to the special skill pay after all these calculations had been made on top of those by virtue of the fact that she was a licensed architect and was putting her architect seal on documents that were signed by her in that professional capacity. And that's also in the separate appendix at page 66. So she earned all the dollars that she was paid. No, no. Whoa, whoa, whoa. She earned what she was entitled to be paid. She received more than she was entitled to be paid. How is it more if it's special skills pay? You just said that that's why she got special skills pay. She was an architect. Yeah, but the error was not in giving her special skills pay. The error was in the calculation of special skills pay. By adding it to the base pay. To the base pay. That's right. Obviously, she earned those dollars because she was paid them, and she was paid them because you wanted to. You're not conceding anything by that. Yeah, she got paid extra because she had special skills. But it's the amount that she was entitled to get paid extra that's in dispute. No. It isn't in dispute. What's in dispute is you have a formula which says you got paid those dollars, but those don't count toward your retirement benefit.  No, no. The error affected both her pension and her salary. You're saying she was overpaid in the first place. Yes. And then her pension was based on overpayment. Exactly right. Why was she overpaid? It's as if somebody put an extra zero at the end of her special skills pay. It's a calculation mistake. So let's say you're supposed to... So these personnel forms that show you're going to get an extra so many dollars per year, per month, because of special skills pay, she didn't deserve that. She deserved most of the special skills pay that she... She deserved all the special skills pay she was entitled to. But they miscalculated her total salary by putting the special skills pay into the formula before the multiplication for cost of living and longevity. So where does it do that first? Is the formula contained in an agreement that she was party to? Yes. There was a memorandum of agreement. By the way, I do want to clarify. And was the correct formula in that memorandum of agreement, or was it the incorrect formula that you're saying should not have been used? The formula includes the memorandum of understanding, which is the contract, contains the correct formula. It says that after all of her other salary is calculated, she's entitled, in addition to that, special skills pay equal to 5% of her base pay. So that's correct, right? Is that what she received? No. They gave her more than that because they included it in her base pay instead of giving it to her after her base pay. So in a next year's pay period, it would look like her salary was higher than it was supposed to be. Yes. The first time she collected it, she was entitled to it. She was entitled to it for the first six years that she got it, 2006 through 2011. But she wasn't entitled to have it treated as part of her base pay. Correct. In 2012, 13, and the first five months of 2014. So this is something that I didn't understand fully. Yes. In response then to Mr. Martinkus' argument that she simply should receive what she contracted for, you're saying what she contracted for was the correct formula, but that when her pay was calculated, they didn't use the correct formula that had been agreed upon, but some other formula that was incorrect. Exactly right. And I do want to correct my grief. I made a mistake, which is I said she signed these forms. She never signed these forms. They were signed by the various personnel of the Capital Development Board. I assume that the human resources person prepared them, submitted them in the normal process so that they were reviewed, and everybody could say that this is what we understand she's entitled to be paid. But they were wrong. And no government official has the authority to authorize the payment to somebody of something that's inconsistent with what they're legally entitled to pay. I think that's well established as a matter of general law involving the government. Because this is arcane to me. Yes. Let me state something, and you tell me if it's accurate. Her salary, I apply a 2% COLA to that. But if I include her special skills pay and the salary, I'm applying the 2% COLA to all of it. Exactly right. I should only be applying it to the base pay plus whatever these extras that she was entitled to. The longevity. Longevity. That's exactly right. And it was the Capital Development Board made this mistake. It was brought to their attention that they used to do it right for six years, and then the Auditor General said, wait a minute, now you're getting it wrong, which apparently had to do something with their payroll processing software. I don't understand more about that. But it is included, an extensive description of this is included in the supplemental appendix at pages 66 and 67. Another way of saying that is that she earned the special skills pay, but she ought not be entitled to COLA benefits by adding the special skills pay on top of the base pay. Correct. Because that would increase the value of the COLA in each successive year. Exactly right. And it would increase the longevity pay in each successive year. And this continued for close to two and a half years. Counsel, you argued earlier that Mr. Martinkus was misrepresenting the record by saying that there was a contract. But yet, when Justice Harris asked you a few moments ago whether she contracted for the correct formula, you said, yeah, she did. So there was a contract. It was a memorandum of understanding. It was not these personnel action forms. He's characterized these as contracts that were offered to her and she accepted. That's not supported by the record. That's factually incorrect. But she's working. She's getting paid. So whether it's a written contract or a royal contract, there is a contract. The memorandum of understanding is the contract. Absolutely. These reflect an erroneous calculation of what she was owed under that memorandum of understanding. And that's a classic example of overpayment under a contract. It's also a classic example of the government. Who are these people that are signing off on these things? In other words, the people that sign off on these don't really know what the hell's going on. Well, I think they trusted. Yeah, they're trusting the accounting division or whoever. That's an accurate, if not charitable, description of what happened. And I think the law is very clear that if a government officer doesn't have authority to promise money or contract for money or pay money that isn't owed, the person doesn't get to say, oh, I get to keep it. I mean, this is sort of like the classic law of restitution. It's been around for centuries. It goes back to Roman times. If you are paid something that isn't owed, there's a prima facie case of restitution to get it back by the person who paid it to you. Government isn't excluded from that. The U.S. Supreme Court has made it clear for the federal government, if you pay a tax refund twice, the taxpayer doesn't get to keep the second refund. The Illinois Supreme Court has said the same thing. If there's an erroneous overpayment... Would you agree, however, the optics aren't good? No, they're terrible. Nobody. Government should get it right the first time. Unfortunately, it doesn't always do that. And nobody's going to dispute that this woman was receiving this payment, including her pension for a period of time, and then gets this letter in this mail saying the auditor general said we made a mistake, we overpaid you, let's work out a repayment plan, that she was dismayed and upset. But did she have a legal right to keep the money? Absolutely not. Well, how about if she already spent the money? Well, that would be a defense to a restitution claim. But it's not a basis to go to court and say that there's a violation of a statute that prohibits you from applying an offset to her monthly annuities for the salary overpayments. The purpose of the court in this situation, if there's a contract dispute like that or a restitution dispute like that, is not to decide it if it's already been subject to an administrative proceeding. Isn't there something in contract law, let me think, detrimental reliance? But it has to be reasonable. A stockhold doesn't generally apply to the government except in the most extraordinary circumstances. And it has to be detrimental reliance based upon a reasonable reliance upon a misrepresentation by the government by somebody who had authority to make the commitment. That's the Patrick Engineering case and that's the Matthews v. CTA pension fund case. The idea that government can somehow make a mistake and you automatically get to keep the money is not consistent with the law in this state. Otherwise, government finances would be subject not to the decisions by the lawmakers who determine how much you should be paid and by their authorized representatives who enter into collective bargaining agreements, but they'd be subject to the whims and errors of lower-level public servants who make mistakes on these things. That can't be the way that government runs. Should we be so involved in discussing contract law here when the pension code provides the provision for CSRS to collect an overpayment? I don't think so. With respect to the pension correction or modification, she had a choice to make. She could have gone to CSRS and said, this isn't a mistake. I had a contract right to receive this money. And she didn't do that. She refused to participate, as a result of which, with respect to the pension modification, she's left with a very limited argument, which is that the statute that was passed recently, following this court's sharp decision to give CSRS authority to fix pensions in the event of a mistake and to recover overpayments if it discovers those mistakes within three years, that that statute was intended to accomplish virtually nothing. That when the legislature, this court said, listen, this is a matter for the legislators to take up. If CSRS wants to fix pensions in the case of a mistake, let the legislature fix that. And the legislature, with almost lightning speed, did exactly that. And it said, if there's a mistake in the calculation of a benefit so that it's – not in the calculation, if there's a mistake in a pension determination resulting in an incorrect amount, it shall immediately fix the problem. And the plaintiff's theory is that mistakes should be given this exceedingly narrow interpretation based on a case that has been since repudiated, inconsistent with the text of the statute, inconsistent with the legislative history. My brief, I think, addresses this at length. With respect to the pension issue, she had her chance to argue that this wasn't a mistake, that this was a contract right that she was entitled to receive. She blew that off. And as a result, she can't now say, oh, well, let's just rewrite the statute that was passed after the sharp case to give it essentially no effect that was intended. To the extent that there's an issue on the salary overpayment, separately now we're going to the comptroller's proceeding. Her theory is that the statute in the pension code that exempts CSRS annuity payments from judgment, execution, garnishment, attachment, or other service by process, prohibits state setoffs or offsets under Section 10.05 of the State Comptroller's Act. Those two address different things. The one addresses judicial action to enforce a judgment by a creditor or a prejudgment attachment by a creditor. Setoff or offset is a self-help remedy. It doesn't involve judicial help, and it doesn't involve dispossessing somebody of something they already had. In this case, the money was always in state coffers. Yes, it was earmarked to pay her pensions, but the offset said, wait a minute, if you owe the state money back, then we can offset that and send it to the state agency to whom you owe the money, and she has the right to participate in that comptroller proceeding, which she did. The comptroller kept the money in a trust fund for 60 days until that issue was decided, and she still has the right to go in front of the court of claims. I do want to say one thing. The theory that these are somehow contracts that were separately negotiated with her, that defies the Public Labor Relations Act. She's saying she went outside the union as the exclusive collective bargaining agent for the members in the bargaining unit and cut a side deal? That's direct dealing. That is categorically prohibited by the Public Labor Relations Act. There could not be any separate contract with her outside the collective bargaining agreement and the amendments to that that were negotiated with the union. All of this is a bunch of smoke and mirrors at the end of the day. There was an error in the calculation of her salary. It's unfortunate, but it's one that she has no right to keep under general restitution principles, and to the extent that she believes that she's got defenses to a restitution claim, those are ones that belong in a court of claims. They're not ones that entitle this court to say or the court to say, ignore sovereign immunity and give an exceedingly narrow interpretation to the offset statute so that it doesn't apply according to its terms. If I may add one thing. Well, counsel, you are out of time. Okay, I see that, Your Honor. I wanted to mention that the statute has now been amended. All right, no, you said no. Forgive me. I get wound up sometimes. Thank you, Your Honor. Mr. Martinkus. A couple thoughts. First of all, with respect to the statute, the statute cannot take the place of the Constitution. So whatever argument that he makes with respect to this particular statute is irrelevant. He's given you no argument, frankly, that permits the state to come in and take $30,000 from her pension. Second, this generic memorandum of understanding agreement, apparently, between the union and the board, first of all, I don't think there was any representation that she was a union member. I don't know. But I think his argument might hold more water if the actual personal action form signed and approved did not specify the actual amount of pay. In each of these forms, if you look at the ones dated January 26, 2012, it states the annual payment, $111,576. Under remarks, it talks about the methodology that may be used to accomplish it. But this isn't the same thing that counsel is trying to get you to believe, that, hey, there's a memorandum of understanding which now controls how you get paid. No. Each of these cases involves a personal contract in addition to whatever memorandum of understanding. Well, Mr. Martinkus, he indicated that there's a memorandum of understanding that's negotiated, and that negotiated memorandum of understanding contained the formula for the calculation of pay. But the amount of pay actually paid out didn't utilize that formula. It utilized an incorrect formula. So how is that not a mistake that can be remedied via the pension code? Two different issues. If the personal action form, which sets forth the actual amount of the contract, I don't know how it's incumbent upon my client to know exactly how they arrive at that number. Well, he would say it's not relevant. It's unfortunate, it's unseemly, but it's not relevant because it constitutes a mistake. But under general contract law, it would be relevant if I agreed that you're going to pay me $111,000. How you arrived at that, how you calculated it, is not something that should befall on me. That's the first thing. And moreover, it's a mistake in what? It's a mistake in the manner in which they formulated this contract with my client, not in the way in which they paid it out, they paid the money, and then they used that amount to calculate a pension. And none of this gets to when counsel suggests that we should go to the Court of Claims. Clearly, we don't have to go to the Court of Claims. The fundamental issue still is, no matter what your thought is with respect to the CSRS, whether you think this is a mistake under the new statute, there's nothing I've heard at all, nothing, that any argument that gives rise to permit them to come in and take their pension for the contract claim, for the overpayment on the contract claim. Our Constitution is very clear. You can't diminish or impair a person's pension rights. That's exactly what they're doing. But the proper procedure would have been for them to file suit against my client. And if, in fact, my client was found to somehow owe this money, which I don't think she would ever be found, then they can try to collect that money like any other creditor. But they can't come in and simply take her pension. And, again, that is separating the contract claim from the pension claim. Thank you. Oh, if I may, one last thing. He talks about this interpretation. Second District in SOLA addressed that exact issue. It says, here, there's no allegation of fraud or misrepresentation by plaintiff, nowhere by the board, rather the board is seeking to modify plaintiff's benefits because it now believes, following the advice of the Department of Insurance, that the pension code does not allow cost-of-living increases to surviving spouses' pensions. This change in the board's interpretation of the pension code does not qualify as an error allowing the board to modify plaintiff's pension pursuant to Section 3-1442. So I think, really, it's in that same vein that they're trying to do this. Thank you. Okay. Thank you. Thank you both. Very good arguments. The case will be taken under advisement, and a written decision shall issue. Court stands at recess.